UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re: Vanessa D. Smith,                    Case No. 13-31565-KLP
　　　　Debtor                               Chapter 13

## MEMORANDUM OPINION

On occasion, a court must discipline an attorney in order to preserve the integrity of the bankruptcy system and the court and to protect the general public from abusive practices and unprofessional conduct of attorneys.  Unfortunately, this case presents such an occasion.

### Statement of the Case

The Debtor in this case, Vanessa D. Smith, filed a Chapter 13 bankruptcy on March 21, 2013.  Daryl A. Parker served as her counsel from the inception of the case until it was voluntarily dismissed on June 18, 2013.

On July 30, 2013, the Office of the U.S. Trustee filed a Motion to Examine Fees Paid to the Debtors' Attorney Pursuant to 11 U.S.C. § 329 (the "Fee Motion"), seeking an order requiring Mr. Parker to disgorge all fees and costs paid to him in this case. Mr. Parker filed a Response to the Fee Motion on September 18, 2013.

On September 30, 2013, the Office of the U.S. Trustee filed a Motion for Order to Show Cause (the "Show Cause Motion"), seeking entry of an order directing Mr. Parker to show cause why he should not be held in contempt for the violation of various provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, ECF Rules and the Virginia Rules of Professional Conduct in connection with his representation of the Debtor.  No written response was filed to the Show Cause Motion.

1

The Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

An Order to Show Cause was entered by this Court on September 30, 2013, directing Mr. Parker to appear personally before this Court on October 16, 2013, to show cause why he should not be held in contempt for his actions in this case, why sanctions should not be assessed against him and why he should not be suspended from appearing before this Court. At the request of the parties, the hearings on the Fee Motion and the Motion to Show Cause were scheduled to be heard simultaneously at a later date.

On December 10, 2013, the Court held a hearing on the U.S. Trustee's Motions. Mr. Parker personally appeared and was represented by counsel. At the hearing, the Court received evidence and heard the arguments of the parties. At the conclusion of the hearing, the Court advised the parties that it would order Mr. Parker to disgorge all of the attorneys fees and costs he had received in this case and deferred its ruling on the Show Cause Motion.

## **Findings of Fact**

In March of 2013, Vanessa D. Smith was delinquent in rental payments and facing an eviction from her home. She contacted an attorney, Daryl A. Parker, at the suggestion of Mr. Parker's receptionist, who was Ms. Smith's sister. Ms. Smith's initial meeting with Mr. Parker lasted approximately 15 minutes. Mr. Parker filed a Chapter 13 bankruptcy petition on Ms. Smith's behalf on March 21, 2013, which resulted in the cancellation of eviction proceedings.

2

The required schedules, statement of financial affairs, chapter 13 statement of current monthly income and disposable income calculation, attorney fee disclosure, notice to individual consumer debtor and chapter 13 plan were not included in the initial bankruptcy filing.  Consequently, the Clerk issued a deficiency notice, which was mailed to Ms. Smith and emailed to Mr. Parker on March 24.  The deficiency served notice that the missing documents were due by April 4, 2013.  The notice further provided that the failure to timely file these missing documents, or to timely seek an extension of time within which to file them, would result in the automatic dismissal of the bankruptcy case.

The bankruptcy petition filed on March 21 was accompanied by Exhibit D, the Individual Debtor's Statement of Compliance with Credit Counseling Requirement, which included a representation that Ms. Smith had received a briefing from an approved credit counseling agency in the 180 days prior to the bankruptcy filing, as required by § 109(h) of the Bankruptcy Code, 11 U.S.C. § 190(h).[1]  A certificate from the counseling agency describing the services it provided to the debtor was not included with Exhibit D.  This resulted in another notice from the clerk's office, this time advising Ms. Smith and Mr. Parker that the failure to file the missing certificate within 14 days of the bankruptcy filing would result in the case being dismissed.

On April 3, 2013, a certificate of counseling was filed with the Court.  In contrast to the initial Individual Debtor's Statement of Compliance with Credit Counseling Requirement, the certificate states that Vanessa D. Smith received a

---

[1] All subsequent reference to the Bankruptcy Code are to 11 U.S.C. §§ 101-1532.

3

credit counseling briefing with Advisory Credit Management, Inc. on April 3, 2013, at 11:17 AM, which was after the date upon which Ms. Smith's bankruptcy was filed. Ms. Smith was not told by Mr. Parker, or by any member of his staff, that she was required to obtain credit counseling until approximately a week after the bankruptcy filing.

On April 11, 2013, an order dismissing Ms. Smith's bankruptcy case was entered as a result of the Debtor's failure to timely file lists, schedules and statements and for failure to file and distribute the Chapter 13 plan. Less than two hours after the dismissal order was entered on the docket, Daryl A. Parker electronically filed schedules and a statement of financial affairs, a notice to consumer debtors, a chapter 13 statement of current monthly income, and a Chapter 13 plan on behalf of Vanessa D. Smith. Each of these documents included the electronic signature of Ms. Smith, with all but the notice to consumer debtors having been acknowledged under penalty of perjury.

Later on April 11, 2013, Mr. Parker filed a Motion to Vacate Order Dismissing Case (the "Motion to Vacate") seeking to reinstate Ms. Smith's bankruptcy case. The Motion to Vacate failed to include an explanation for the failure to timely file the required documents. At the initial hearing on the Motion to Vacate held on May 1, 2013, the Court directed Mr. Parker to file an amended Motion setting forth the reason why the documents had not been timely filed. Mr. Parker filed an Amended Motion to Vacate on May 9 stating that "[t]he debtor needed additional time to secure proof of her income in that she is not paid by check" and that "due to the debtor's delay, [the schedules, lists and plan] were not timely filed with the Court."

4

On May 14, the Court entered an order granting the Amended Motion to Vacate and rescheduling the § 341 hearing for May 23, 2013.

Ms. Smith learned of the dismissal of her case by contacting the clerk's office, and she subsequently received notice of the dismissal in the mail from the clerk's office. Upon contacting Mr. Parker's office, she was advised by a member of Mr. Parker's staff that "they would get another date." Ms. Smith was subsequently contacted by Mr. Parker, who advised her that he had filed the Motion to Vacate. He did not explain why the case had been dismissed but stated that the case would go forward after the dismissal was vacated.

Ms. Smith recalled providing various documents, primarily information regarding her income, to Mr. Parker's office about two weeks after her initial meeting with him, though she does not remember the exact date. She did not review or execute the schedules, statement of financial affairs, chapter 13 plan or any other document filed with the Court subsequent to the documents initially filed on March 21, 2013.[2]

On May 23, 2013, Ms. Smith appeared at the office of the U.S. Trustee in order to attend her rescheduled § 341 hearing. Mr. Parker failed to appear and, after waiting for approximately 3 hours for Mr. Parker and attempting unsuccessfully to contact him at least seven times, she left. Mr. Parker did not advise Ms. Smith that he might be late for the hearing nor did he get word to Ms. Smith that he was

---

[2] The first time she saw, or received a copy of, these documents was when she appeared with Mr. Parker at the June 6, 2013, rescheduled § 341 hearing. It was not until that time that she learned the monthly amount she would be required to pay to the chapter 13 trustee pursuant to the plan.

5

running late. Mr. Parker subsequently requested that the U.S. Trustee reschedule the § 341 hearing, indicating that his failure to appear was the result of having been delayed in another court. The U.S. Trustee granted the request to reschedule and another § 341 hearing was scheduled for June 6, 2013.

On June 6, 2013, Ms. Smith, accompanied by Mr. Parker, appeared at another rescheduled § 341 hearing. At that hearing, for the first time, she saw or received a copy of the documents filed by Mr. Parker on April 11. It was not until that time that she learned the monthly amount she would be required to pay to the chapter 13 trustee pursuant to the plan Mr. Parker had filed. Also at the rescheduled hearing, she learned that she was already two payments behind in her required payments to the chapter 13 trustee under that plan. Ms. Smith assured the chapter 13 trustee and Mr. Parker that she could make up the payments. In the meantime, Ms. Smith had also failed to make at least one postpetition rent payment to her landlord who had, in response, resumed eviction proceedings in state court.

Subsequent to attending the § 341 hearing on June 6, Mr. Parker suggested to Ms. Smith that she should consider moving to dismiss her case so that she could file a new bankruptcy case, which would enable her to address the post petition eviction proceedings and initiate a new payment schedule with the Chapter 13 trustee. Mr. Parker explained to Ms. Smith that she could file Chapter 13 "as many times as she liked." He did not explain the implications of filing multiple bankruptcy cases. Ms. Smith agreed to follow Mr. Parker's advice and authorized him to file the voluntary dismissal motion.

On June 12, 2013, Mr. Parker filed a Motion to Dismiss the Debtor's case (the "Motion to Dismiss").  The Motion to Dismiss states that "[t]he debtor is no longer able to comply with the requirements of her Chapter 13 Plan and hereby request [sic] that her Chapter 13 case be dismissed without prejudice."  On June 18, the Court entered an order dismissing the case.

After the dismissal of her Chapter 13 case, and again facing imminent eviction proceedings, Ms. Smith was contacted by Mr. Parker's assistant and advised that Mr. Parker would be unable to represent her in a new case.  Ms. Smith was able to secure alternative counsel and file another bankruptcy case in time to stay the new eviction proceedings.

Ms. Smith testified that Mr. Parker was rude to her, would not return phone calls, failed to explain the bankruptcy process and her duties and obligations, and failed to keep her advised of developments in her case.  Neither Mr. Parker, nor any member of his staff, assisted her in preparing or reviewing the documents she was required to file with the Court, nor was she advised by Mr. Parker of the consequences of failing to timely file those documents.

Ms. Smith earns $9.75 per hour.  She missed approximately 6 hours from work in order to appear at the § 341 hearing on May 23 that Mr. Parker failed to attend.  She also lost approximately 7 hours of pay in order to attend the Show Cause hearing.

On September 17, 2013, Mr. Parker met with a trial attorney from the Office of the U.S. Trustee to discuss the Office's concerns with Ms. Smith's case.  At that time, Mr. Parker did not convey a sense of concern over the Debtor's failure to

7

obtain credit counseling until almost two weeks after the bankruptcy filing. The trial attorney requested that Mr. Parker provide the Office of the U.S. Trustee with documents containing the Debtor's original signatures, but Mr. Parker was unable to provide original executed copies of the schedules and plan filed in this case and acknowledged at the hearing on December 10 that he cannot produce copies of the documents filed with the Court on April 11 that include the Debtor's signatures.

Mr. Parker testified his usual procedure is to have his bankruptcy clients review the petition, schedules and other required documents before signing them and that they must be signed before they are filed with the court, although he acknowledged that he is not always personally involved in that process. He typically provides a worksheet to his client that includes disclosures and schedules and other substantive documents are not prepared until the requested information is provided by the client. He admitted that he was not directly involved in Ms. Smith's review and execution of documents but that, due to Ms. Smith's relationship with his receptionist, her case was out of the ordinary.

Mr. Parker apologized to Ms. Smith and the Court for the "cracks in this particular case." He has recently taken steps to improve office procedures, including instituting a new calendaring system. He has also enlisted the help of at least one experienced attorney in an effort to improve his law practice.

## Conclusions of Law

The implementation of electronic case filing ("ECF") in 1999 fundamentally altered the functioning of the bankruptcy courts by eliminating the filing, processing and storage of mounds of paper and by allowing remote participation by practicing

8

attorneys. Courts have been required to adopt rules and procedures necessary to preserve the integrity of the judicial process and safeguard the reliability of documents filed electronically. Despite the changes to the legal system occasioned by the development of this technology, the standards of care applicable to attorneys remain undiminished and the veracity, integrity and competence of attorneys continues to be essential to our system of justice.

Rule 83 of the Federal Rules of Civil Procedure (FRCP), Fed. R. Civ. P. 83, Rules 5005(a)(2), 9011 and 9029 of the Federal Rules of Bankruptcy Procedure (FRBP), Fed. R. Bankr. P. 5005(a)(2), 9011 and 9029, and Local Bankruptcy Rule (LBR) 5005-1, authorize this Court to establish practices and procedures for the filing, signing, maintaining, and verification of pleadings and papers by electronic means. Under that authority, the Court entered Standing Order No. 08-4 on March 14, 2008, effective March 17, 2008, which adopted LBR 5005-2. Pursuant to LBR 5005-2, the Clerk of Court is permitted to promulgate and revise the Court's Electronic Case Files (CM/ECF) Policy.

Under LBR 5005-2 and the Case Management/Electronic Case Files Policy Statement established by the Clerk of Court and made effective on July 30, 2012[3] (the "Policy Statement"), a registered participant, or "User," such as Daryl A. Parker, must file all documents with the Clerk in accordance with the provisions contained in the Policy Statement. Policy Statement, Policy 1(B). The electronic transmission of a document to the Court's ECF System, together with the transmission of a Notice

---

[3] The version of the Policy Statement that was in effect when Mr. Parker filed Ms. Smith's case.

of Electronic Filing from the Court, constitutes the filing of the document, and the User is bound by the document as filed. Policy Statement, Policy 3(A) and (B).

In electronically filed cases, the "/s/" followed by a full typewritten name on a document constitutes that person's signature. See Policy Statement, Policy 8; *In re Wenk*, 296 B.R. 719, 724 (Bankr. E.D. Va. 2002). When an attorney files a document purportedly containing the debtor's signature, he is representing to the court that he has secured the original executed document prior to it being electronically filed. *Id.* at 725. The electronic submission of a document by an attorney who falsely represents that the document has been signed by the debtor "is no different than [the attorney] physically forging the debtor's signature and handing [it] over the counter to the clerk." *Id.* The Policy Statement includes a means by which the authenticity of a document may be verified by requiring that documents which require original signatures and that are electronically filed must be maintained by the User until 3 years after the closing of the case, and upon request of the Court, the User shall provide such originally executed document or imaged record for review. Policy Statement, Policy 7(A).

FRBP 1008 requires that all petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746. The lists, schedules and statements executed by a debtor are submitted under penalty of perjury. Only the debtor can state under oath that the information included in these documents is true and correct. *In re Wenk*,

296 B.R. at 727.[4]  Mr. Parker, by affixing Ms. Smith's electronic signature to the documents, represented that Ms. Smith had in fact executed the documents and stated that the information contained therein was true and correct.

The proper administration of any bankruptcy case is dependent on the debtor's providing complete and accurate information concerning his or her assets, debts and financial affairs.  A debtor who provides false or inaccurate information may be exposed to loss of discharge and, in some cases, criminal prosecution.  Therefore, an attorney has an affirmative duty to meet with his clients and counsel them regarding the legal significance of their actions.  *In re Dalton*, 95 B.R. 857, 860 (Bankr. M.D. Ga. 1989), *aff'd*, 101 B.R. 820 (M.D. Ga. 1989).  It is the responsibility of the attorney to ensure that the schedules, statements and lists filed with the Court have been reviewed, approved and signed by the debtor before they are filed with the court.

Ms. Smith did not review or execute the schedules, statements, lists and chapter 13 plan filed with the Court on April 11, 2013.  Mr. Parker was unable to produce copies of the document with the Debtor's signature, as required by the Clerk's CM/ECF Policy, and admitted that he has no such documents.  Mr. Parker admitted that he did not witness Ms. Smith's execution of the documents and produced no member of his staff who may have witnessed her signing the documents.  In short, it is uncontroverted that Ms. Smith did not review and execute

---

[4] Policy Statement 8(A) provides: "General Requirements: All filings, which (1) must contain original signatures, (2) require verification under FRBP 1008, or (3) contain an unsworn declaration as provided in 28 U.S.C. §1746, shall be filed electronically or in accordance with the <<Notice of Electronic Filing Procedure>>. An electronic filing by a User constitutes that person's signature under FRBP 9011 and <<LBR 5005-1(C)(4)>>."

11

her schedules, statements, lists and chapter 13 plan prior to their filing and it is also uncontroverted that these documents, purporting to include Ms. Smith's verification and signatures when none existed, were filed with the Court by Mr. Parker.

The Bankruptcy Code and the Federal Rules of Bankruptcy Procedure include provisions specifically designed to prevent malfeasance on the part of an attorney. Bankruptcy Rule 9011(b) and 11 U.S.C. § 707(b)(4)(C) provide that an attorney filing documents or pleadings with the court is required to make a reasonable inquiry about the information contained in those documents and, when presenting them, is certifying that they are being offered for a proper purpose and with evidentiary support. Mr. Parker's filing of the unsigned and unverified schedules, statements and lists in this case is a clear violation of those provisions.

With limited exceptions that are inapplicable to this case, an individual such as Ms. Smith is ineligible to be a debtor unless she has received credit counseling in the 180 days prior to the filing of the bankruptcy petition. 11 U.S.C. § 109(h). Ms. Smith was not advised by Mr. Parker of her obligation to receive credit counseling prior to her bankruptcy filing and, therefore, failed to obtain counseling until over a week after the petition was filed. Despite her having not received the mandatory counseling, Mr. Parker filed, or caused to be filed, an Exhibit D-Individual Debtor's Statement of Compliance with Credit Counseling Requirement which included a fraudulent representation that Ms. Smith had received a briefing from an approved credit counseling agency in the 180 days prior to the bankruptcy filing.

The record does not address whether Ms. Smith actually executed the Exhibit D that was filed with the Court, so it must be assumed that it was actually reviewed

12

and signed by Ms. Smith. Nevertheless, its inaccuracy reflects Mr. Parker's general lack of care and attention. After the trial attorney for the U.S. Trustee' Office met with Mr. Parker to discuss his conduct in this case, the trial attorney noted that Mr. Parker did not appear to be aware that credit counseling must be completed prior to a bankruptcy filing.[5] Although courts may differ in responding to a debtor's failure to receive a prepetition credit briefing, there is no reason why an informed debtor would risk potential dismissal of her case, or a similar complication, if it could be avoided. It follows that Ms. Smith would have complied with the counseling requirement had she been properly advised. Whether her failure to do so results from Mr. Parker's inattentiveness or his unfamiliarity with the basic provisions of the Bankruptcy Code, Mr. Parker's complicity in filing the fraudulent document is unacceptable.

Bankruptcy clients rely on their attorneys to explain an unfamiliar and complicated process so that they can make informed, appropriate decisions. *In re Alvarado*, 363 B.R. 484, 487 (Bankr. E.D. Va. 2007). An attorney has an affirmative duty to meet with and counsel his clients, answer any questions the client may have and explain the legal significance of their actions. *See In re Daw*, No. 90-00690-TLM, 2011 WL 231362 (Bankr. D. Idaho January 24, 2011).[6] Mr. Parker failed to properly advise Ms. Smith of the statutory requirement that she first obtain credit counseling in order to be eligible to file bankruptcy. Furthermore, he did not make the

---

[5] The Court notes that Mr. Parker's suggestion that Ms. Smith could file Chapter 13 "as many times as she liked" suggests that Mr. Parker either does not appreciate the implications of multiple bankruptcy filings or did not see fit to explain those implications to Ms. Smith.

[6] Under the Virginia Rules of Professional Conduct, Va. Sup. Ct. R. Pt. 6, § II, 1.4, a lawyer is required to "keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

13

reasonable inquiry necessary to determine that the information contained in the Exhibit D he filed with the Court was accurate . Had he done so, he would have been aware that Ms. Smith had not completed the credit counseling requirement and that Exhibit D was incorrect. Mr. Parker's actions, which resulted in the filing of the fraudulent Exhibit D, violated 11 U.S.C. § 707 (b)(4)(D) and FRPB 9011.[7]

Ms. Smith's description of Ms. Parker's demeanor and the nature in which he conducts his law practice is also quite disturbing to the Court. LBR 2090-1 (I) adopts the Virginia Rules of Professional Conduct as the ethical standards relating to the practice of law in this Court. This Court has emphasized that these Rules set only a minimum level of acceptable conduct because bankruptcy law often presents complex ethical situations that are unique to the practice. *In re Alvarado,* 363 B.R. at 490. One of an attorney's fundamental ethical obligations is that he must effectively communicate with his client and keep his client informed about the status of a matter. *See supra* note 5. Attorneys are responsible for maintaining the integrity of the judicial process and courts must be able to rely on the veracity and competence of attorneys. *In re Alvarado,* 363 B.R. at 490.[8] An attorney has an obligation "to maintain a professional demeanor at all times" and "[c]lients must be able to impart complete trust and confidence in their counsel." *Id*.

---

[7] The U.S. Trustee has pointed to the language contained in the Motion to Dismiss filed by Mr. Parker and the representation that "[t]he debtor is no longer able to comply with the requirements of her Chapter 13 Plan . . . as another instance in which Mr. Parker made a false representation to the Court, given that Ms. Smith had assured both Mr. Parker and the Chapter 13 trustee that she was able to catch up the plan payments she had missed.

[8] Virginia Rules of Professional Conduct, Preamble ¶ 1, Va. Sup. Ct. R. Pt. 6, § II provides that "[a] lawyer is a representative of clients . . . an officer of the legal system and a public citizen having special responsibility for the quality of justice."

The record establishes that Mr. Parker fell far short of the minimum level of acceptable conduct required under the Virginia Rules of Professional Conduct and this Court's expectations.  Mr. Parker failed to communicate with Ms. Smith, failed to keep her informed about the status of the case and the duties and obligations incumbent upon her as a debtor in bankruptcy, and failed to adhere to acceptable standards of personal conduct.

Mr. Parker's treatment of Ms. Smith reflects poorly on the legal profession and is unacceptable to the Court.  Whether or not he purposely intended to deceive the Court, he was complicit in the filing of false information. That Ms. Smith may have been related to a member of his staff is irrelevant.  Even if certain tasks were delegated to a subordinate, Mr. Parker retained the ultimate responsibility for the conduct of this case.  *Id.*[9]

Mr. Parker's testimony revealed his awareness of the deficiencies in his standard of practice and in his handling of Ms. Smith's case in particular.  Expressing regret for these shortcomings and seeking to improve office procedures by soliciting help and guidance from an experienced practitioner are commendable but in this case fall far short of an adequate remedy.  Unfortunately, Ms. Smith's case is not an isolated instance, as the Court is aware that the Office of the U.S. Trustee has filed show cause motions against Mr. Parker in a number of other cases pending in this Court involving circumstances similar to Ms. Smith's case.[10]

---

[9] Rules of Professional Conduct, Va. Sup. Ct. R. Pt. 6, § 2, R. 5.3(b)—"[A] lawyer having direct supervisory authority over [a] nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer...."
[10] Case nos. 13-31527-KRH, 13-34220-KRH, 13-35495-KRH and 13-35780-KRH.

15

The U.S. Trustee has requested that Mr. Parker be suspended from practicing in this Court and asks that he be required to participate in continuing legal education focusing on bankruptcy law and ethics. The Court has a duty to protect an unsuspecting public from attorneys who fail to perform competently and professionally and has broad discretion to impose sanctions under 11 U.S.C. § 105 and FRBP 9011(c). Until such time as Mr. Parker demonstrates that he is able to practice in a responsible and competent manner, he should be prohibited from practicing in this Court.

Section 329(b) of the Bankruptcy Code authorizes the Court to order the return of compensation paid to an attorney when the payment exceeds the reasonable value of the services provided by the attorney. The Disclosure of Compensation of Attorney for Debtor, filed with Ms. Smith's schedules and signed electronically by Mr. Parker, reveals that Ms. Smith paid $600.00 to Mr. Parker prepetition, and she was required to pay a $281 filing fee in the case as well. She also forfeited 6 hours of income at the rate of $9.75 per hour in order to attend the §341 hearing on May 23 which hearing did not occur after Mr. Parker failed to appear. She also lost 7 hours of pay in order to attend the Show Cause hearing held in this Court on December 10, 2013. The sole value to the debtor afforded by Mr. Parker in this case was to secure the automatic stay that enabled Ms. Smith to temporarily avoid being evicted from her home. Conversely, nearly every other act performed by Mr. Parker in this case was to the detriment of Ms. Smith. Ms. Smith sacrificed considerable time, effort, resources and peace of mind in her attempt to successfully complete this case with Mr. Parker only to find that she was forced to

16

start over with another attorney in a second bankruptcy case. Having examined the services provided by Mr. Parker in this case in light of their limited value and poor quality, the Court has determined that Mr. Parker is not entitled to an award of attorney fees and must disgorge the fees and costs he received. Since there is no longer a chapter 13 trustee involved in this case, 11 U.S.C. § 329(b)(2) provides that the fees and costs be returned to Ms. Smith.

Ms. Smith lost approximately $127 in income due to the time she spent on May 23 and December 10. Pursuant to 11 U.S.C. §105 and FRBP 9011(c), the Court is authorized to award this additional sum to Ms. Smith.

A separate order will be entered.

Signed: January 14, 2014

          /s/ Keith L. Phillips
United States Bankruptcy Judge

Copies to:        Entered on Docket:  January 14, 2014

Vanessa D. Smith
3701 Malbon Way
Chesterfield, VA 23832

Darryl A. Parker
3113 W. Marshall Street
Suite 2A
Richmond, VA 23230

Robert E. Hyman
P.O. Box 1780
Richmond, VA 23218-1780

Shannon Franklin Pecoraro
Robert B. Van Arsdale
Office of the U.S. Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219